***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioners Berger, Jones, and Donovan, and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission hereby reverses Deputy Commissioner Donovan's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement, which are incorporated herein by reference, and at the hearing before former Deputy Commissioner Jones as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. At all relevant times, the defendant-employer Deviprya, L.L.C., T/A Howard Johnson's Express Inn of Wilmington was insured by Ohio Casualty Company.
3. The issues for determination are:
a. Was the plaintiff an employee of Deviprya, L.L.C., T/A Howard Johnson's Express Inn of Wilmington at the time of her alleged injury by specific traumatic incident, or was she employed solely by Kat's Cleaning Service;
b. Did the plaintiff sustain a compensable, specific traumatic incident on January 23, 2002;
c. What was the plaintiff's average weekly wage on January 23, 2002; and,
d. To what medical and compensatory benefits is plaintiff entitled.
4. The parties stipulated the following documentary evidence:
a. The plaintiff's medical records, admitted as Stipulated Exhibit 1;
b. The License Agreement between Howard Johnson's International, Inc., and Katherine's Cleaning Service, admitted as Stipulated Exhibit 2;
c. The Articles of Organization for Deviprya, L.L.C., as filed with the Department of the Secretary of State, admitted as Stipulated Exhibit 3; and,
d. The plaintiff's responses to defendants' First Set of Interrogatories, admitted as Stipulated Exhibit 4.
 ***********
Based upon all the competent evidence of record, and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, the plaintiff was 43 years old, and had an eighth grade education.
2. The plaintiff began her employment with Kat's Cleaning Service (hereinafter "Kat's") in Fall 2001. She was assigned to work at the Howard Johnson's Express Inn (hereinafter "Howard Johnson's") in Wilmington, North Carolina, and worked there for her entire employment with Kat's.
3. The plaintiff's assignment at Howard Johnson's was primarily as the laundress. The plaintiff also worked as an assistant manager over the other employees of Kat's. The plaintiff arrived at work at approximately eight a.m. She obtained a list of the rooms requiring service for the day, depending on whether guests were leaving, arriving, or staying over. The plaintiff took the list to the on-premises office used by Kat's and assigned the day's work to the other Kat's employees. Thereafter, the plaintiff would begin doing the laundry from the rooms. If there came a point during the day that the plaintiff finished the laundry, she would assist the other Kat's employees in cleaning rooms.
4. Howard Johnson's provided the laundering machines, the soap, bleach, and any other materials necessary for doing the laundry or cleaning the rooms. Howard Johnson's required that all cleaning personnel wear uniforms; however, Kat's could determine the make-up of the uniforms (black shirts with black or khaki pants).
5. Rocky Amin, the manager of Howard Johnson's, hired Kat's to provide cleaning services for the motel. Mr. Amin lived on the motel premises and was present at the motel on a daily basis. Kat's hired and fired its own employees, and was paid by Howard Johnson's based upon the number of rooms cleaned. The cleaning crews were paid bi-weekly by Kat's, based upon the work that was done. During the busy season, the plaintiff earned between $200.00 and $250.00 per week as the laundress, with extra income if she worked cleaning rooms. In the off season (primarily winter months), plaintiff earned approximately $105.00 per week.
6. In addition to her regular duties, the plaintiff and other employees of Kat's were occasionally given other duties by Mr. Amin, not related to cleaning services. These duties included moving boxes of written materials to be placed in rooms from the office to the rooms and taking inventory of supplies. There is no evidence of record upon which to find that the employees of Kat's were under any obligation to perform the requests asked of them by Mr. Amin.
7. Mr. Amin testified that he brought any complaints regarding the cleaning services directly to Kathryn Brown, the owner of Kat's, and never discussed specific work details with any employees of Kat's. The plaintiff and two other witnesses stated that Mr. Amin would tell them directly when he was dissatisfied with their work. The plaintiff and one other witness stated that Mr. Amin would threaten them with termination of their employment when he was dissatisfied with the manner in which they performed their duties. Despite his threats of termination, there is no evidence of record upon which to find that Mr. Amin had any authority to terminate the Kat's employees, or that Mr. Amin had ever terminated or attempted to terminate a Kat's employee.
8. On January 23, 2002, the plaintiff was working in the laundry room with two other employees of Kat's when Mr. Amin entered. He noted that the laundry bleaching supplies were getting low and told the plaintiff to obtain additional buckets of bleach to hook up to the machines. When the plaintiff attempted to lift a 30-gallon bucket of washing bleach, she felt her back "pop." The plaintiff ignored the situation and attempted to pick up a five-gallon bucket of rinsing bleach. Upon doing so, the plaintiff felt a sharp pain in her lower back.
9. The plaintiff suffered an injury to her lumber spine as a result of a specific traumatic incident that occurred as a result of the work assigned to her as an employee of Kat's on January 23, 2002.
10. Based on the totality of the evidence of record, the Full Commission finds that the plaintiff was solely the employee of Kat's and, thus, was not jointly employed by both Kat's and Howard Johnson's.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order for defendant Howard Johnson's to be held liable for the plaintiff's injury under the Act, it must be shown that the plaintiff was employed jointly by both Kat's (the general employer) and Howard Johnson's (the special employer). Leggette v. McCotter, 265 N.C. 617,144 S.E.2d 849 (1965). The test for joint employment was established inCollins v. James Paul Edwards, Inc., 21 N.C.App. 455, 204 S.E.2d 873
(1974):
When a general employer lends an employee to a special employer, the special employer become liable for workmens' compensation only if:
(a) the employee has made a contract of hire, express or implied, with the special employer;
(b) the work being done is essentially that of the special employer; and
(c) the special employer has the right to control the details of the work.
When all three conditions are satisfied in relation to both employers, both employers are liable for workmens' compensation.
Id., citing 1A Larson, Workmens' Compensation Law, § 48.00.
2. In the present case, element (a) of the Collins test is not satisfied, because there was no contract of hire, express or implied, between the plaintiff and Howard Johnson's. There was clearly only one express contract, which is the cleaning contract entered into between Kat's and Howard Johnson's. In Collins, the Court held that an implied contract may arise from an employee's acceptance of the special employer's control and direction. While on the surface it may appear that the employees of Kat's accepted Howard Johnson's control and direction, the employees were simply remaining obedient to Kathryn Brown's commands that they perform the necessary cleaning duties to satisfy her contractual obligation with Howard Johnson. Because the plaintiff and her co-workers were carrying out the instructions of their general employer (Kathryn Brown and Kat's), they did not accept control and direction by the defendant Howard Johnson's. Thus, the plaintiff made no implied consent to a special employment with Howard Johnson's. Id.
3. Element (b) of the Collins test is also not satisfied in the present case, because it cannot be said that the work performed by the plaintiff and the other Kat's employees was "essentially that of the special employer." The objective of the plaintiff's position with Kat's was to provide cleaning services. While Howard Johnson's was indeed in need of cleaning services, such housekeeping duties represent a mere fraction of the hotel's operating functions. Thus, it does not follow that the plaintiff was essentially performing the work of Howard Johnson's when the operation and management of a hotel require duties far beyond cleaning services. Id.
4. The third and final element of the Collins test, element (c), is also not satisfied in the present case, because the evidence of record does not show that Howard Johnson's had the right to control the details of the work performed by Kat's employees, including the plaintiff. Although Mr. Amin of Howard Johnson's occasionally "spot checked" some hotel rooms to ensure the housekeeping work of Kat's employees were meeting quality assurance specifications, there is no evidence that Mr. Amin undertook the role of supervisor or instructor for the employees of Kat's. The right of control over Kat's employees belonged to Kathryn Brown. Id.
5. The plaintiff has cited Henderson v. Manpower of Guilford County,Inc., 70 N.C. App. 408, 413 — 14, 319 S.E.2d 690, 693 (1984), in support of her assertion that she was jointly employed by Kat's and Howard Johnson's. However, in Henderson, the general employer was a temporary employment agency in the business of furnishing employees to other employers. In the case of a temporary employment agency, it is much easier to find a contractual arrangement in which the work performed is essentially that of the special employer, and subject to the direct control of the special employer, as set forth in Collins. Thus,Henderson is factually distinguished from the present case.
6. The plaintiff was solely the employee of Kat's and, thus, was not jointly employed by both Kat's and Howard Johnson's; therefore, Howard Johnson's is not liable for plaintiff's workers' compensation claim.Collins v. James Paul Edwards, Inc., 21 N.C. App. 455, 204 S.E.2d 873
(1974).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. The plaintiff's claim against defendant is hereby, and must under the law be, DENIED.
2. The parties shall be responsible for their own costs.
This 8th day of August 2005.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER